84

*Municipal Court of the City of Boston*

## Nos. 340942, 340942A

# QUINLAN PUBLISHING CO., INC.

**v.**

# WILLIAM M. KILEY AND MASS PORT REALTY CO., INC.

**v.**

# HENRY M. QUINLAN

Argued: June 13, 1975. Decided: Dec. 30, 1975.

Case tried to *Foster, J.*

Present: Canavan, J., Doerfer, J.

Counsel for Henry M. Quinlan: Quinlan & Quinlan, 88 Broad Street, Boston, Mass. 02110.

**Doerfer, J.** This is an action of contract to recover upon a check in the amount of $6,000 drawn upon the account of the corporate defendant and signed by the individual defendant. Both defendants answered with a general denial, pleaded lack of consideration and alleged that plaintiff was not a holder in due course. William M. Kiley also answered that he signed the instrument in a representative capacity only. The defendants each brought a third party declaration against Henry M. Quinlan to recover that amount in the event they are found liable to plaintiff.[1] The third part defendant filed a general denial and pleaded satisfaction of the claim.

---

[1] The third party declaration alleged, in substance, that Henry M. Quinlan took the instrument and completed it by causing his name to be inserted as payee, and by inserting the amount of $6,000; that he knew there were insufficient funds to cover the check at the time he received it and that he kept the proceeds of the check for himself.

*The material facts reported are as follows:*

On March 2, 1973 one Charles Kiley ("Charles"), a brother of William M. Kiley ("William") was in possession of a check drawn upon the account of Mass Port Realty Co., Inc. ("Mass Port") and signed by William. William, it was admitted was the President of Mass Port. There was printing at the top of the check stating:

> "Mass Port Realty Co., Inc.
> Standish Village Plaza (Suite N)
> 243 Church Street (Rt. 139)
> Pembroke, Mass. 02539"

There was no printed material of any kind at the bottom of the check, nor, in particular, immediately above or below the line reserved for the signature of the drawer. The check was signed "William M. Kiley" without any further indication that he was signing as an agent of Mass Port. Neither the amount nor the payee of these checks was filled out at the time. Charles testified that he had received the checks from William. The checks were drawn upon the Rockland Trust Company in Rockland, Massachusetts.

At about 1:30 p.m. that day Henry M. Quinlan and Charles met at 152 Galen Street, Watertown, where they had adjacent offices. Henry M. Quinlan testified that he had seen as many as three Mass Port checks in Charles' possession signed in blank, at one time on other occasions but on March 2, 1973 he saw two such checks. Henry M. Quinlan testified that Charles told him he needed to get some cash for the weekend for him and his brother William; that his brother was tied up and couldn't get to the bank in Rockland, but that he had a Mass Port check which he could make payable to Henry M. Quinlan. He requested Henry M. Quinlan to go to the Quinlan Publishing Co., Inc. in town to get a cashier's check payable to

the National Shawmut Bank in exchange for the Mass Port check. He told Henry M. Quinlan he didn't have enough money in his own account.

Mass Port did maintain a checking account with the Rockland Trust Company and the only person authorized to sign checks on the account was William.

Charles caused the name of Henry M. Quinlan to be put on the check as payee and the check to be completed in the amount of $6,000. Charles then delivered the check to Henry M. Quinlan.

Henry M. Quinlan thereupon took the check to the Quinlan Publishing Co., Inc., and endorsed the check over to it. He delivered the check along with another check for $150 to the secretary and office manager of Quinlan Publishing Co., Inc., one Mrs. Ruth McCann. She was in charge of the office in the absence of Eugene Quinlan, the president, who was in Florida. She had authority to receive and sign checks for Quinlan Publishing Co., Inc. She made up a deposit slip for $6,150. She knew that William, the person who signed the check, was president of Mass Port. The check was stamped with an endorsement stating "Pay to the order of The First National Bank of Boston. Quinlan Publishing Company, Inc." Mrs. McCann testified that Henry M. Quinlan had the run of the office and that she was doing as he told her. Henry M. Quinlan then took the check and deposit slip to the First National Bank of Boston and deposited it in the account of the Quinlan Publishing Co., Inc.

Henry M. Quinlan was not an officer or employee of Quinlan Publishing Co., Inc., although he had been a former employee and "had been identified as legal counsel and a member of the Board of Directors of Quinlan Publishing Co., Inc." (R. 3).

Henry M. Quinlan nevertheless made out a check drawn on the account of Quinlan Publishing Co., Inc., made it payable to the First National Bank of Boston

in the amount of $6,150 and signed his name to it as President of Quinlan Publishing Co., Inc. This check was then negotiated to the First National Bank of Boston as payment for a cashier's check in the amount of $6,000 payable to the National Shawmut Bank. (The record is silent on what happened to the $150. balance of this check). Henry M. Quinlan then delivered this $6,000 cashier's check to Charles who took it to the Brighton branch of the National Shawmut Bank and cashed it.

There was conflicting evidence whether Charles turned the cash over to Henry M. Quinlan, and the trial justice made no specific finding of fact on the subject.

The court found as a fact that the plaintiff had given consideration for the instrument and that it was a holder in due course and that the instrument was complete at the time of the delivery. A finding was entered for the plaintiff and for the third party defendant.

### Holder in Due Course Issue.

Appellants point out that the only person acting for the plaintiff to effectuate the giving of consideration to its transferor was Henry M. Quinlan, who is himself the transferor. He took the check to the bank; he signed, as "president", the check by which the cashier's check was purchased; no one other than Henry M. Quinlan was acting for the corporation at the time consideration was given.[2] They argue that

---

[2] Consequently the claim of error regarding the denial of requests No. 7 of both defendants is deemed waived.

"7. As a matter of law, the plaintiff did not give its transferor value for the instrument. COURT: Denied."

any knowledge or notice to Henry M. Quinlan, at the time Quinlan Publishing Co., Inc. gave value, regarding any infirmities was knowledge or notice to the corporation. From this argument, they urge that plaintiff is not a holder in due course. G.L. c. 106, §3-303.

Under G.L. c. 106, §§1-201(27), "Notice knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction . . ." Even though Henry Quinlan had no "official" status with Quinlan Publishing Co., Inc., no one else but he was "the individual conducting that transaction" for the corporation at the time the corporation gave value for the instrument. Mrs. McCann didn't cause a check to be drawn on the Quinlan Publishing Co., Inc. account payable to the National Shawmut Bank; Henry M. Quinlan did. In fact, he signed it as President. At the time value was given by Quinlan Publishing Co., Inc., Henry M. Quinlan was the person acting for Quinlan Publishing Co., Inc. Under the section of the Uniform Commercial Code quoted above, any knowledge or notice Henry M. Quinlan had as to infirmities in the instrument was knowledge or notice to Quinlan Publishing Co., Inc. *American Underwriters Corp. v. Rhode Island Hospital Trust Co.,* 303 A. 2d 121 (R.I. 1973); *Stanley v. Fabricators Inc.,* 6 UCC Rep. 1262 at 1268-1269, 459 P. 2d 467 (Alaska 1969).

Plaintiff agrees and asserts that it gave value, as found by the court. On the facts reported, value was given at the time the cashier's check was purchased from the First National Bank by a check drawn on plaintiff's account, and that cashier's check was received

by Henry M. Quinlan.[3] Thus, to establish that value was given, plaintiff must rely upon the acts of Henry M. Quinlan as its own acts. Yet it, in the same breath, seeks to deny that Henry M. Quinlan was acting for it, as far as possession of any knowledge by Henry M. Quinlan of any defects or defenses in the instrument ruled upon. Plaintiff, however, having offered evidence and now relying upon that evidence of the agency of Henry M. Quinlan is bound by it. *Muir Brothers Co. v. Sawyer Construction Co.,* 328 Mass. 413, 415 (1952).

The trial justice made a general finding for the plaintiff and the following three specific findings of fact: that Quinlan Publishing Co., Inc. was a holder in due course; that plaintiff had given consideration for the instrument and that there was no question that the instrument sued upon was a complete instrument at time of delivery.

To be a holder in due course the transferee must take the instrument in good faith, without notice of any defense and for value. G.L. c. 106, §3-303. From the above considerations it is clear that Quinlan Publishing Co., Inc. took the instrument chargeable with all knowledge held by Henry M. Quinlan of any defense, if any, and thus was not a holder in due

---

[3] The act of Mrs. McCann in filling out a deposit slip and endorsing the check for deposit was not the giving of value. There is no reported evidence that Mrs. McCann gave Henry M. Quinlan any authority or directed him to draw a check upon the company's account for him to purchase a cashier's check. In fact, there is no reported evidence that she was even aware of what he intended to do.

course. Requested rulings, number 6 and 9[4] of both defendants should have been allowed.

Since, as a matter of law, plaintiff was not a holder in due course on the evidence reported the additional question is raised by the denial of request #8 of both defendants[5] is moot.

██ *Representative Capacity of William M. Kiley.*
Defendant William M. Kiley filed two particular requests for rulings relating to his representative capacity, as follows, which were denied.

"14. When a check carries on it the name and address of a corporate drawer the requirement of identification of the principal is met, and the agent signing the check without denoting the capacity in which he signs is not personally liable on the check.

"15. As a matter of law, defendant, William Kiley, signed the check in a representative capacity."

The printing on the check is by no means conclusive as a matter of law that the person signing was acting only in a representative capacity. G.L. c. 106, §3-403. The arrangement of the printing on this check

---

4  "6. As a matter of law the plaintiff is not a holder in due course. COURT: **Denied.**

"9. As a matter of law, the plaintiff is charged with the knowledge of any defense defendant has against the payee Henry Quinlan who purported to act for the plaintiff in the negotiating of the instrument. COURT: **Denied.** See findings."

5  "8. As a matter of law the plaintiff did not take the instrument from its transferor in good faith. COURT: **Denied.**"

certainly didn't clarify William's role as that of mere agent. Cf. G.L. c. 106, §3-403 (2) (b). Furthermore, there was ample evidence reported from which the trial justice could conclude that William was acting for himself. These requests were properly denied.

Similarly the justice was correct in denying request #10 of William that,

> "As a matter of law no consideration was given to the defendant William Kiley, for the instrument."

There was adequate evidence from which the justice could find to the contrary.

### Defenses to Instrument.

Since the plaintiff is not a holder in due course it took the instrument subject to any defenses (or claims) of any party to it. This means, of course, that any claim on the instrument by the defendants or any defense which defendants have on the instrument as against Henry M. Quinlan are assertable against the plaintiff. All such claims or defenses, however, were resolved in favor of Henry M. Quinlan by the finding of the trial justice in the third party action. Since no requests for rulings were reported relating to the third party action, a finding for the third party defendant implies that all factual issues necessary to sustain such a finding were resolved in favor of the prevailing party. In particular, the trial justice must have resolved the factual question relating to whether Henry M. Quinlan received the $6,000 cash in question in favor of Henry M. Quinlan. Mass Port and William Kiley failed in their attempts to establish a defense to the instrument.

■ From the above consideration the erroneous ruling that plaintiff was a holder in due course was without prejudice to the defendants since it was established that there was no defense to the instrument anyway.

The trial justice was presented with a requested ruling of law on behalf of each defendant that, as a matter of law, a finding for the defendant was warranted. In each case the response was "Denied. May be warranted but does not compel".[6] Taking the response as a whole, the requested rulings were in fact allowed, and the "trap for the unwary" of which we have been recently reminded was avoided. *DiGesse v. Columbia Pontiac, Inc.,* Mass. (1975)[a].

### Report dismissed.

---

[6] Requested ruling #19 as to Kiley: "19. As a matter of law a finding for the defendant, William Kiley is warranted. COURT: **May be warranted but does not compel.**"

Requested ruling #12 as to Mass Port: "12. As a matter of law finding for the defendant, Mass Port Realty Co., Inc. is warranted. COURT: **Denied. Warranted but not compelled.**"

Page 9 of the Report omits the second phrase from the ruling on request #12 of Mass Port. From the original papers on file in the case it is clear this was a clerical error, and the phrase does in fact appear in the trial justice's ruling. The report is hereby corrected accordingly. Dist./Mun. Cts. R. Civ. P. 60(a).